# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

In the Matter of: }
SEVINA D. CHERRY } CASE NO. 12-81454-JAC-13
SSN: XXX-XX-0942 }
 } CHAPTER 13
Debtor(s). }

## MEMORANDUM OPINION

In the matter presently under consideration, the Court must determine whether an agreement between Access Automotive, LLC ("Access Automotive") and Sevina Cherry ("debtor") is a "true lease" or a lease intended as security.

On May 3, 2012, the debtor filed this Chapter 13 proceeding, listing Access Automotive as a secured creditor in the amount of $10,758, secured by one 2003 Buick Rendezvous. The debtor seeks to pay Access Automotive as a secured creditor through her Chapter 13 plan. On May 24, 2012, Access Automotive filed a motion to compel debtor to accept or reject lease and/or motion for relief from stay.

On July 30, 2012, this matter came before the Court for hearing on the parties' respective motions for summary judgment on same. Upon due consideration of the pleadings, arguments of counsel, and documents submitted in support thereof, the Court finds that the agreement is not a "true lease" under ALA. CODE § 7-1-203(b), but is in fact a lease intended as security.

The Court has core jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (b)(2)G), and (b)(2)(O).

## FINDINGS OF FACT

On January 19, 2012, the debtor entered into a contract with Access Automotive entitled "Federal Consumer Leasing Act Disclosures" to "lease" a 2003 Buick Rendezvous. Throughout the contract Access Automotive is referred to as "lessor" and the debtor is referred to as "lessee."

In addition to the debtor's $1,000 down payment, the contract obligated the debtor to make 78 bi-weekly payments in the amount of $140, for a total payment of $11,920.00. The agreed upon value of the vehicle on the date of execution was $6,995. The contract provided that the debtor had an option to purchase the vehicle at the end of lease term for the agreed upon residual value of $350, plus a purchaser option fee of $300.00. The contract further provided an early purchase option at a price of 65% of the total due during the first 24 months.

With regard to early termination and default, the contract provides: "Early Termination. You may have to pay a substantial charge if you end this lease early. <u>The charge may be up to several thousand dollars.</u> The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be." [emphasis in the original]

The contract further provided that the debtor could terminate the lease before the end of the lease term if "you agree to pay an early termination fee and all outstanding payments due." The charge for such early termination is $495.00. Upon such termination, the contract provided that Access Automotive would be entitled to charge for early termination fees, costs of repossession, costs of repairing and reconditioning the leased vehicle, any court costs, and attorney's fees.

On March 6, 2012, the State of Alabama issued a Certificated of Title to said vehicle in the name of Access Automotive as owner.

## CONCLUSIONS OF LAW

The determination of whether a contractual agreement is to be characterized as either a lease or security agreement, is a matter of state law.[1]  The parties agree in this instance that Alabama law governs the issue of whether the subject agreement represents a true lease or a lease intended as security.  This Court has recently held that ALA. CODE § 7-1-203(b) creates a "bright line" test for determining whether a transaction in the form of a lease will be deemed to have created a security interest as a matter of law.  Section 7-1-203(a) and (b) read as follows:

### § 7–1–203. Lease distinguished from security interest.

(a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.

(b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the 302 term of the lease and is **not subject to termination** by the lessee, **and:**

(1) The original term of the lease is equal to or greater than the remaining economic life of the goods;

(2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or

(4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

ALA.CODE § 7–1–203(a)-(b) [emphasis added].

---

[1] *Stern v. Marshall*, 131 S.Ct. 2594, 2616 (2011)(explaining that "property interests are created and defined by state law"); *Butner v. United States*, 440 U.S. 48, 55 (1979)("[t]he existence, nature and extent of a security interest in property is governed by state law.")

4

The fact that the contract between the debtor and Access Automotive purports to be a lease and uses lease terms throughout same is not determinative of the issue before the Court. *See In re Winston*, 181 B.R. 589, 590 (Bankr. N.D. Ala. 1995)(explaining that the parties' characterization of their arrangement as a lease is not determinative in a bankruptcy case as to whether the arrangement is treated as a "true lease" or as a disguised security agreement).

Instead, the Court must considered the two part "bright line" test created under § 7-1-203(b) under which a transaction in the form of a lease will be deemed to have created a security interest as a matter of law if: (1) the agreement cannot be terminated by the lessee, **and** (2) the Court finds that any one of the following requirements is satisfied— (i) The original term of the lease is equal to or greater than the remaining economic life of the goods; (ii) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods; (iii) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or (iv) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

Under § 7-1-203(b), the Court must first determine whether the debtor has a right to terminate the purported lease prior to the expiration of the contract term. Access Automotive argues that the debtor has a right to terminate the contract as outlined therein. The debtor counters that the contract provisions regarding early termination are hopelessly vague where one provision warns that the termination charge may be "up to several thousand dollars," and another provides that the debtor must pay "all outstanding payments due" if the debtor terminates the lease before the end of the lease term, plus an "early termination fee of $495.00." The contract further provides that the actual

Case 12-81454-JAC13    Doc 58    Filed 08/07/12    Entered 08/07/12 14:00:52    Desc Main
Document      Page 4 of 7

charge will depend upon when the lease is terminated and warns that the "earlier you end the lease, the greater this charge is likely to be." As the contract has no meaningful buyout provision, the debtor argues that it fails the test for being a true lease under § 7-1-203(b).

In a case analyzing "early termination" language similar to that contained in the contract before the Court, a Louisiana District Court affirmed a bankruptcy court's decision finding that although the debtor could terminate the lease early, she could not terminate her *obligations* under the lease.[2] The early termination provision in *In re Little* required that, to terminate the lease early the debtor pay a fee of $450, plus the difference, if any between the unpaid adjusted capitalized cost and the vehicle's fair market value, plus "all other amounts then due under the lease." The *Little* court interpreted the phrase "all other amounts then due under the lease" to include the remaining lease payments, referencing another early termination provision which read:

> 8. Early Termination. You may have to pay a substantial charge if you end this Lease early. *The charge may be up to several thousand dollars.* The actual charge will depend upon when the Lease is terminated. The earlier you end the Lease, the greater this charge will be.

The early termination provision in the contract between Access Automotive and the debtor in this case is almost identical to that quoted above. Reading this language, the district court in *Little* held that although the debtor could terminate the lease agreement early, she could not terminate her obligations under the agreement without paying a substantial amount. The district court affirmed the bankruptcy court's interpretation of "all other amounts due under the lease" as including all remaining lease payments in light of the early termination provision which stated that "[t]he earlier you end the lease, the greater this charge is likely to be." Similarly, in this case, the contract requires the debtor to pay a $495 termination charge and "all outstanding payments due." Given the

---

[2] *Automotive Leasing Specialists, LLC v. Little (In re Little)*, 392 B.R. 222 (W.D. La. 2008).

identical language in the contract before the Court that the earlier the debtor ends the lease, "the greater this charge is likely to be," the Court finds that the debtor cannot effectively terminate her obligations under the subject agreement.

The Court further finds that the agreement between the parties which allows the debtor to purchase the vehicle at the end of the contract term for a payment of $350, plus a $300 purchase option fee, is a nominal payment for purposes of § 7-1-203(b)(4). In the case of *In re Winston*, 181 B.R. 589 (Bankr. N.D. Ala. 1995), the bankruptcy court cited approvingly cases from other jurisdictions where end of term purchase options prices similar to that now before the Court were determined to be nominal payments:

> In *Crowder v. Allied Investment Co.,* 190 Neb. 487, 209 N.W.2d 141, 143 (1973), the court held that a purchase option price of $665 constituted nominal consideration, where the subject of the lease was a 1966 Kenworth truck, the lease term was 36 months, the monthly rental was $400, and a downpayment of $2500 was made at the inception of the lease. In *In re Nat'l Welding of Michigan, Inc.,* 17 B.R. 624, 626 (Bankr.W.D.Mich.1982), *rev'd on other grounds,* 61 B.R. 314 (W.D.Mich.1986), the bankruptcy court held that where a lease of a truck required over $40,000 in rent to be paid over the course of 60 months, a purchase option price of $734 would be considered nominal consideration. Where a lease of refrigeration units for a period of 48 months required lease payments in the amount of $104 per month, the $112 purchase option price contained in the lease was determined to be nominal consideration by the court in *Mid–Continent Refrigerator Co. v. Way,* 263 S.C. 101, 208 S.E.2d 31, 34 (1974).

*In re Winston,* 181 B.R. 589, 592 (Bankr. N.D. Ala. 1995).

The *Winston* court further explained that the real yardstick for determining whether a payment is nominal hinges on whether the price bears a resemblance to the fair market value of the article. In this case, Access Automotive argues that the debtor agreed upon the residual value of $350, but the debtor counters that the actual fair market value of the vehicle at the end of the

contract term will be closer to $4775 based on a $600 per year depreciation value.[3] The Court further notes that the debtor will have paid $11,920 for this vehicle at the end of the contract term. Based on all the forgoing, the Court finds that the end of term purchase option of $350, plus the $300 option fee, is nominal consideration for purposes of § 7-1-203(b)(4).

Accordingly, the Court finds that summary judgement is due to be entered in favor of the debtor finding that the contract between Access Automotive and the debtor is not a "true lease" under ALA. CODE § 7-1-203(b), but is in fact a lease intended as security.

A separate order will be entered consistent with this memorandum opinion.

Done and Ordered this day August 7, 2012

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

xc: Debtor(s)
    G. John Dezenberg, attorney for debtor(s)
    Robert V. Rodgers, attorney for creditor
    Philip Geddes, trustee

---

[3] Affidavit of Sevina D. Cherry.